# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHARLES JOLSON DEES,

        Plaintiff,

v.

SHAUNE HOBAN,

        Defendant.

Case No. 18-CV-54-JPS

**ORDER**

On March 21, 2018, the Court screened the operative *pro se* complaint and permitted Plaintiff to proceed on a claim of deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (Docket #11). On September 26, 2018, Defendant moved for summary judgment. (Docket #21). That motion is now fully briefed. For the reasons explained below, Defendant's motion for summary judgment will be granted, and the case will be dismissed.

    **1.**    **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the nonmovant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d

356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 2. RELEVANT FACTS

Plaintiff is an inmate with an above-the-knee amputation, who has a prosthesis that requires specially fitted Nike Airmax shoes (the "Nikes") for comfort and support. On January 20, 2016, Plaintiff was transferred to Dodge Correctional Institute ("DCI") from Rock County Jail. Defendant is a nurse at DCI, and conducted Plaintiff's initial health assessment. Plaintiff explained to her that only the Nikes were compatible with his prosthetic leg, and that he could not wear other shoes. Nevertheless, Defendant determined that Plaintiff's Nikes did not conform with DCI's shoe policy.

DCI's shoe policy requires inmates to wear state-issued boots during their period of incarceration. There are three exceptions to the state-issued boots: (1) health services can issue medical shoes, which have a soft, flexible sole; (2) inmates may purchase two pairs of personal shoes from an approved vendor catalogue, as long as neither pair of shoes exceeds $75.00; (3) inmates may order personal shoes from an outside vendor for a cost over $75.00 if DCI's Special Needs Committee determines that the shoes are medically necessary and a physician or nurse writes an order for the shoes. Inmates are not allowed to wear personal shoes that they wore prior to incarceration.

Plaintiff's Nikes did not fit into any of DCI's categories, nor did he have a physician's note explaining that they were medically necessary. For her part, Defendant had never encountered a patient with a prosthesis made specifically for one pair of shoes, or vice versa. She decided to give Plaintiff a pair of medical shoes that seemed to fit his prosthesis better than the standard-issue boots, and placed the Nikes in the Medication Room to be sent with Plaintiff to his next institution. She also noted, on the Special Needs form, that Plaintiff had personal shoes that were stored in the Medication Room. After conducting the initial health exam on January 20, 2016, Defendant had no further contact with Plaintiff.

Unfortunately, the medical shoes did not provide the support necessary for his prosthetic leg, and caused Plaintiff great discomfort. Plaintiff was incarcerated at DCI until March 7, 2016, when he was transferred to Racine Correctional Institution ("RCI"). Defendant acknowledges that Plaintiff's prosthesis was best designed for an athletic style shoe, but submits that there were "several options for athletic style shoes that were available in the approved vendor catalog[ue]." (Docket #26 ¶ 35). However, the specially fitted Nike Airmax shoes were not available for purchase in the approved vendor catalogue, and there is an issue of fact as to when inmates were allowed to order shoes from outside vendors. (Docket #31 at 6). When Plaintiff was eventually transferred to RCI, the Nikes were not transferred with him as intended. *Id.* at 5; (Docket #31-2 at 5). After his transfer, Plaintiff requested the Nikes, but DCI was unable to locate them. *Id.* at 5, 8–10. On June 7, 2016, when Plaintiff would have been at RCI, a physical therapist's progress notes confirm that the medical shoes "do not fit the prosthesis," affected his gait patterns, and caused Plaintiff pain. *Id*. at 11. The notes indicate that the therapist would contact the

Security Director to determine how to replace the Nikes, which were determined to be medically necessary. *Id.* Around this time, an inmate complaint examiner affirmed Plaintiff's complaint and recommended that Plaintiff "be compensated for the shoes" that were lost. *Id.* at 14.

3. **ANALYSIS**

The Court is limited to the issue before it, which is whether Defendant was deliberately indifferent to Plaintiff's serious medical need when she refused to let him wear his specially fitted Nike Airmax shoes at DCI, and instead required him to wear DCI's medical shoes.

Prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that they "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. The *Gayton* case neatly summarizes the claim:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating h[im]; and (3) this indifference caused h[im] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable

> state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

*Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). In sum, "deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018).

Defendant argues that Plaintiff did not have a serious medical need that required him to wear Nike Airmax shoes. (Docket #22 at 9). Yet a reasonably jury could find that Plaintiff's amputation and prosthesis constitute a serious medical issue, and that his need for appropriate footwear was similarly grave. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a serious medical need is one that is "so obvious that even a lay person would easily recognize [it]."); *Johnson v. Peek*, 1998 WL 764434, at *3 (7th Cir. Oct. 23, 1998) (eye prosthesis "met [court's] definition of a serious medical need."); *Neisler v. Larson*, 2017 WL 913609, at *11 (E.D. Wis. Mar. 7,

2017) (parties do not dispute that issue with prosthesis constitutes a serious medical issue).

The issue, then, is whether Defendant's conduct in requiring Plaintiff to wear the medical shoes, instead of the Nikes, was deliberately indifferent to his serious medical need for appropriate footwear. Defendant has provided evidence that she evaluated Plaintiff's situation in light DCI's shoe policy, and determined that DCI's medical shoes were the most appropriate alternative for his prosthesis. Defendant also provides evidence that she did not merely ignore the importance of the Nikes. She noted that Plaintiff arrived with personal tennis shoes on the Special Needs Committee section, and stated that the Nikes would be kept in the Medication Room.

Plaintiff suffered a great deal of pain as a result of the medical shoes, which were too soft and lacked much-needed support. This pain was exacerbated by the fact that the Nikes were lost by either DCI or RCI. Unfortunately, this institutional negligence does not bear on Defendant's liability. Rather, the evidence demonstrates that she exercised judgment and responded reasonably to the medical need by ordering medical shoes in lieu of standard-issue boots, noting for the Special Needs Committee that Plaintiff had arrived with personal shoes, and preserving the Nikes in the Medication Room. She had no further role in Plaintiff's care, and there is no evidence that she ignored subsequent requests for better footwear or was responsible for losing the Nikes. A reasonable jury could not find that she was deliberately indifferent—"even if the risk of harm ultimately was not averted." *Grayton*, 593 F.3d at 620.

**4.  CONCLUSION**

In light of the foregoing, Defendant's motion for summary judgment must be granted, and the case dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #21) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 11th day of June, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge